IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII


| | | |
|---|---|---|
| RICHARD ADAM, | ) | CIV. NO. 05-00304 JMS/BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| HAWAII PROPERTY INSURANCE | ) | SUMMARY JUDGMENT |
| ASSOCIATION and ISLAND | ) | |
| INSURANCE COMPANY, LTD. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |


## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY

## JUDGMENT

Pro se plaintiff Richard Adam brings this action against Hawaii

Property Insurance Association ("HPIA") and Island Insurance Company

(collectively, "defendants") based on breach of contract, various state law torts,

and  42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986.  Adam originally filed suit in

the United States District Court for the District of New Hampshire and the case

comes before this court on transfer from the District of New Hampshire.

The defendants have moved for summary judgment as to all of

Adam's claims.  The defendants argue that they are entitled to statutory immunity on each of Adam's claims, that the statute of limitations has run as to each of Adam's claims, and that Adam has failed to state a claim under the various federal statutes cited in the Amended Complaint.  For the reasons stated herein, the court GRANTS the defendants' motion for summary judgment as to each of Adam's claims.

## I. BACKGROUND

On October 1, 1998, Adam's house in Milolii on the Big Island of Hawaii burned to the ground.  Prior to his house burning down, Adam alleges that he and his family encountered discrimination and threats from their neighbors in Milolii as well as members of the local police department.  As a result of this hostility, Adam contends that he was forced to leave his Milolii home shortly before it was destroyed by fire.  Adam has litigated issues surrounding the alleged harassment and the fire in both federal and state courts for the last seven and a half years.  By way of background, the court will review Adam's insurance claim, his allegations regarding the fire and the events leading up to the fire, and his lawsuits regarding these matters.

Adam maintained fire insurance on his Milolii residence with HPIA, with the policy being serviced by Island Insurance.  The policy required Adam to

submit a claim within 60 days of a loss and barred lawsuits filed more than one

year after the date of loss.  On October 2, 1998, the day following the fire, Adam

filed a claim under the policy.  The defendants have never paid Adam's claim.

Island Insurance first contended that Adam was not entitled to

coverage because he had not paid his insurance premiums.  Once Adam proved

that he had in fact paid his premium, Island Insurance stated that Adam did not

have an insurable interest in the home because the house was in his wife's name

rather than his.  Adam contended that he was in fact the owner of the house and

that, regardless, he had an insurable interest in the home because he occupied it

with his wife and their infant daughter.  Island Insurance next contended that

Adam was not entitled to coverage because Adam started the fire.   Though Island

Insurance has never issued Adam a formal denial of his claim, it has consistently

stated that it will not cover Adam for the loss from the fire and it continues to

maintain that Adam started the fire himself.

On July 27, 1999, within the one-year period required by the policy,

Adam filed an Amended Complaint in the First Circuit Court of Hawaii alleging

that HPIA and Island Insurance wrongfully denied him coverage under the

insurance policy and that their denial deprived him of his property in

contravention of 42 U.S.C. § 1983.  Island Insurance and HPIA filed an answer on

August 6, 1999, denying that Adam was entitled to coverage.  On May 2, 2001,

the Circuit Court dismissed Adam's suit pursuant to Circuit Court Rule 12(q) for

failure to file a pretrial statement.  Adam did not appeal this ruling and took no

further action to pursue his rights under the contract in state court.

Prior to his house burning down, Adam alleges that he had

encountered problems with local residents in and around his neighborhood and

that the police had failed to protect him and his family from these residents.  In

June 1998, just a few months prior to his house burning down, Adam filed a civil

rights suit in the United States District Court for the District of Hawaii against the

State of Hawaii and the Hawaii County Police Department ("HCPD").  He alleged

that the police failed to protect him and his family and that the police condoned

harassment against him and his family because they (the Adams) are white.

Adam's claims against the State of Hawaii were dismissed but his claims against

the police department went to trial.  Adam tried his civil rights claims before a jury

in June of 2004 and the jury found in favor of the defendants.  Adam appealed the

verdict claiming, inter alia, that Judge Helen Gillmor altered transcripts and

conspired with the defendants.  The Ninth Circuit affirmed the verdict.

A few months after the verdict, on September 14, 2004, Adam filed

the instant action against HPIA and Island Insurance in Federal District Court for

the District of New Hampshire.  Adam claims that he is entitled to recover for the loss of his home under the insurance policy and that the defendants engaged in bad faith and fraud in denying his claims.  Adam also alleges that the defendants violated his civil rights.  Specifically, Adam alleges that the defendants ignored evidence from three white witnesses in making their determination that Adam, and not someone else, set fire to his home.  Adam also contends that the defendants conspired with Lerma, his local counsel in his state court action, to mislead Adam about the statute of limitations that applied to his claim.

Adam makes a number of allegations that appear unrelated to the defendants in this case and that reiterate some of the factual allegations underlying his civil rights suit against the police department.  He alleges that his neighbors in Milolii continuously harassed him and his family and that the police department and volunteer fire department refused to protect him because of his race.  He also contends that police officers conspired to provide false evidence that Adam started the fire at his home.  In addition, Adam maintains that the State of Hawaii forced him to leave his Milolii home shortly before the fire and then forced him to leave the state less than a year later.  Adam has been living in New Hampshire since May, 1999.

Adam has received numerous opportunities in the course of this

lawsuit to articulate and support his claims.  On November 1, 2004, the defendants

moved to dismiss Adam's claims but the New Hampshire District Court denied

their motion without prejudice and directed Adam to file an Amended Complaint

clarifying his claims.  After Adam filed an Amended Complaint, the defendants

again moved for a dismissal, or in the alternative, for a transfer of venue to the

District of Hawaii.  The New Hampshire District Court concluded that it lacked

personal jurisdiction over the defendants and transferred the case to the District of

Hawaii.

        The defendants have now moved for summary judgment as to all of

Adam's claims.  Adam filed an Opposition to the defendants' motion as well as a

Concise Statement of Facts with twenty-eight attached exhibits.  Without leave of

court, Adam filed an additional Amended Opposition to the defendants' motion.

On December 5, 2005, the court heard argument from Adam and the defendants

regarding the defendants' motion for summary judgment.  In reaching its decision,

the court has considered all memoranda and exhibits submitted by the parties as

 well as the argument at the December 5, 2005 hearing.[1]

---

[1] The Defendants argued in their Reply to Adam's Opposition to the Defendants' Motion
for Summary Judgment that the exhibits attached to Adam's Concise Statement of Facts are
inadmissible.  Nonetheless, for purposes of this motion, the court considered all the exhibits
Adam submitted.

//

//

## II.  LEGAL STANDARD

Summary judgment is appropriate when:

> [T]he pleadings, depositions, answers to interrogatories,
> and admissions on file, together with the affidavits, if any,
> show that there is no genuine issue as to any material fact
> and that the moving party is entitled to a judgment as a
> matter of law.

Fed. R. Civ. P. 56(c).

The primary purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).  The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'"  *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322).

## III.  DISCUSSION

## A.  Statutory Immunity

Article 21 of the Hawaii Insurance Code, Hawaii Revised Statutes ("HRS") chapter 431, created HPIA, a nonprofit entity, in order to "[a]ssure the availability of basic property insurance" in the State.  HRS § 431:21-101.  The statute specifically provides that "[t]here shall be no liability on the part of and no cause of action of any nature shall arise against any member insurer . . . [or] the association . . . for any action taken by them in the performance of their powers and duties under this article."  HRS § 431:21-117.

Counts I, II, and III of Adam's Amended Complaint appear to assert claims for breach of contract, bad faith, fraud, and defamation arising out of the defendants' allegedly improper denial of Adam's insurance claim and the ensuing litigation.  Count I, entitled "Bad Faith and Fraud," alleges that the defendants wrongfully denied Adam's insurance claim after his house burned down.  It alleges that the defendants first claimed that Adam failed to pay his insurance premium and then, after Adam presented them with proof of payment, the defendants claimed that Adam did not have an insurable interest because his wife owned the home.  Count II, entitled "Malice and Fraud," asserts that the defendants wrongfully accused Adam of burning down his own house and that the defendants defamed him, engaging in "false racial propaganda" via

8

newspaper, television, and radio.  Count III, entitled "Fraud by Concealment, Evasion, Fabrication, and Deception," relates to events that occurred after Adam's state court suit against the defendants was dismissed without prejudice on May 2, 2001.  Count III alleges that the defendants conspired with Adam's attorney to mislead him about the statute of limitations that applied to his claims, informed Adam in 2002 that his claims were time barred, and informed him in 2003 that Island Insurance had obtained a civil judgment against him.

These claims, insofar as they are based on state tort law, are barred under the plain language of HRS § 431:21-117.  The statute provides immunity from all liability for HPIA, "the association," and Island Insurance, a "member insurer."  HRS § 431:21-117.  Adam offers no support for his contention that the defendants are not entitled to the immunity afforded them under the plain language of the statute.[2]

The defendants acknowledge that HRS § 431:21-117 does not bar claims to recover under the terms of an insurance contract.  Though Adam does not specify a breach of contract claim, he states in both his Amended Complaint

---

[2] Relying on the plain language of an analogous statute involving the Hawaii Insurance Guarantee Association ("HIGA"), the Hawaii Supreme Court held that statutory language similar to that found in HRS 431:21-117 immunized HIGA and its member insurers from suit. *Mendes v. Hawaii Ins. Guar. Ass'n,* 87 Haw. 14, 950 P.2d 1214 (1998).

and his Memorandum in Opposition that he is entitled to recover for the damage to his home under the insurance policy.  He specifically alleges in the Amended Complaint that he purchased fire insurance from the defendants, that his property was damaged by fire, and that the defendants wrongfully denied his claim for recovery.  While HRS § 431:21-117 bars all of Adam's claims for recovery based on state tort law alleged in Counts I, II, and III of the Amended Complaint, the defendants are not immune from Adam's claim for recovery under the terms of the policy.

Adam also asserts various civil rights claims based on federal statutes.  Specifically, Adam alleges that the defendants have engaged in an ongoing conspiracy with police officers, state and federal judges, gang members, and volunteer fire fighters in order to deny him coverage under the insurance policy and to prevent him from presenting evidence concerning the destruction of his home, all because he is white.  Adam asserts claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986 based on this alleged conspiracy (Counts IV, V, VI, and VII of the Amended Complaint).

HRS § 431:21-117 does not immunize the defendants from Adam's federal causes of action.  Though the state may create immunity for causes of action based on state law, such immunity cannot serve as a bar to suits brought to

enforce federally guaranteed civil rights. *Martinez v. California*, 444 U.S. 277, 284 (1980) ("Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3) cannot be immunized by state law." (Internal quotation marks omitted.)); *Hedges v. Musco*, 204 F.3d 109, 115-16 (3d Cir. 2000) ("[S]tate law cannot immunize government employees from liability resulting from their violation of federal law." (*Quoting Good v. Dauphin Co. Social Serv. for Children and Youth*, 891 F.2d 1087, 1091 (3d Cir. 1989))). At the December 5, 2005 hearing, the defendants acknowledged that a state statute could not immunize them from actions based on federal statute. Therefore, HRS § 431:21-117 only bars Adam's claims based on state law torts (Counts I, II, and III) against the defendants.

## B.  Breach of Contract

Adam's breach of contract claim is barred by the express limitation period contained in the contract.  The insurance contract contains a one-year limitation on actions to enforce the policy:  "No action shall be brought unless there has been compliance with the policy provisions and the action is started within one year after the loss."  Hawaii law expressly permits this contractual limitation.  HRS § 431:10-221(a)(3).

Adam alleges, however, that he filed a claim within the time period

required by the policy and that he filed suit within a year of the fire in state court. After the state court action was dismissed, Adam contends that the defendants conspired to deliberately mislead him about the statute of limitations that applied to his claims. Though Adam does not discuss the principles of equitable tolling or equitable estoppel, the court examines the applicability of these principles in light of Adam's allegations. The court concludes that neither of these principles operates to extend the one year period during which Adam could have brought this claim beyond September 13, 2004, when he filed the instant action in New Hampshire. Therefore, to the extent Adam seeks to recover under the terms of his insurance policy, his claim is barred by the limitation period contained within the policy.

Under Hawaii law, the doctrine of equitable tolling operates to toll the statute of limitations when a party files an insurance claim within the time required by the policy. *See Christiansen v. First Ins. Co. of Hawaii*, 88 Haw. 442, 454, 967 P.2d 639, 651 (1998), *affirmed in part and reversed in part by* 88 Haw. 136, 963 P.2d 345 (1988) (reversing the Intermediate Court of Appeal's application of the equitable tolling doctrine but emphasizing that "our opinion is not to be construed as a rejection or disapproval of the equitable tolling doctrine"); *Wright v. State Farm Mut. Auto. Ins. Co.*, 86 Haw. 357, 949 P.2d 197

(1997) (recognizing in a third party insurance context that filing a claim tolls the limitation period).  The statute of limitations begins to run again when the insurance company denies the claim.  *Christiansen,* 88 Haw. at 454, 967 P.2d at 651.

Adam filed a claim on October 2, 1998, the day after his house burned down, thus tolling the one-year statute of limitations contained in the contract.  Though the parties agree that Island Insurance has since effectively denied Adam's claim, the record contains no official denial letter.[3]  The defendants argue that, at the latest, Adam was on notice that his claim had been denied on August 6, 1999, when Island Insurance and HPIA filed their answer to Adam's complaint in the First Circuit Court of Hawaii.  In his First Amended Complaint, Adam alleges that in an April 2, 2001 letter, Island Insurance accused him of starting the fire "and denied my claim."  In his Opposition to Defendants' Motion for Summary Judgment, Adam argues that the "first actual denial of this claim" was not made until January 28, 2002,[4] when Island Insurance sent him a letter stating that it stood by its position that Adam had started the fire and that

_____

[3] When asked about this issue at the December 5, 2005 hearing, counsel for the defendants stated that no official denial letter was issued.

[4] Adam argues that his claim was denied on January 28, 2001.  The 2001 date appears to be in error as the letter Adam cites, which is attached as Exhibit 10 to Adam's Concise Statement of Facts, is dated January 28, 2002.

any claim Adam might have under the policy appeared to be time barred.   Even

using the latest date, January 28, 2002, and taking into account equitable tolling,

Adam would have had to file the instant lawsuit within one year of January 28,

2002.  Instead, he filed his lawsuit on September 13, 2004, well after the one-year

limitation period lapsed.

Adam also alleges that the defendants conspired with Lerma, his

attorney in the state court action, in order to mislead him about the statute of

limitations that applied to his claims.  Thus, it could be argued that the defendants

should be estopped from asserting the statute of limitations as a barrier to Adam's

claims.  "[O]ne invoking equitable estoppel must show that he or she has

detrimentally relied on the representation or conduct of the person sought to be

estopped, *and* that such reliance was reasonable." *Waugh v. University of*

*Hawaii*, 63 Haw. 117, 129, 621 P.2d 957, 967 (1981), quoting *Doherty v. The*

*Hartford Insurance Group,* 58 Haw. 570, 573, 574 P.2d 132, 134-35 (1978).

Thus, Adam must show that the defendants actually conspired with his attorney to

mislead him about the statute of limitations, that he relied on their representations

to his detriment, and that his reliance was reasonable.

Adam has failed to cite any evidence in support of this alleged

conspiracy.  When the court asked Adam about the conspiracy at the December 5,

2005 hearing, he merely stated he was forced to use Lerma as local counsel in his

state court case because his primary attorney was from Massachusetts.  He could

point to nothing in the record that indicates that the defendants conspired with

Lerma or that anyone misled him about the statute of limitations.  Adam has

presented no evidence to support his bare assertion that the defendants engaged in

any conduct that would estop them from asserting the statute of limitations as an

affirmative defense in this case.  Adam's breach of contract claim is therefore

barred by the statute of limitations.

## C.  Federal Civil Rights Claims

Adam asserts civil rights claims under §§ 1981, 1982, 1983, 1985,

and 1986.  The defendants argue that each of these claims is barred by the

applicable statute of limitations and that each lacks the factual support necessary

to survive the defendants' motion for summary judgment.  The court addresses

each of these claims in turn.

### 1.  §1981

Adam alleges that the defendants denied him his right to sue, to

enforce contracts, and to give evidence in violation of 42 U.S.C. § 1981.  Adam

appears to assert § 1981 claims based on two factual allegations.  First, Adam

alleges that the defendants conspired with Lerma, his attorney in his breach of

contract suit in state court, to mislead him about the statute of limitations that

applied to his claims.  He contends that the defendants and Lerma conspired

against him because he is white.  Second, Adam alleges that the defendants failed

to consider evidence offered by three white witnesses that someone besides Adam

set fire to Adam's Milolii home.

The defendants argue that Adam's claim that they conspired with

Lerma lacks factual support and fails to establish racial animus on their part.  The

defendants do not specifically address Adam's claim with respect to the three

white witnesses; instead, they argue that a two-year statute of limitations applies

to Adam's § 1981 claims and that the two-year period has long expired.

The defendants are entitled to summary judgment with respect to

Adam's § 1981 claim based on the alleged conspiracy with Lerma because Adam

has produced no evidence indicating that such a conspiracy existed.  As discussed

above, when asked at the December 5, 2005 what evidence Adam had to suggest

that the defendants in this case conspired to mislead him about the statute of

limitations, Adam could point to nothing.  Such unsupported allegations cannot

survive a motion for summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986) (holding that summary judgment must be granted against a

party who fails to demonstrate facts to establish what will be an essential element

at trial); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (noting that the non-moving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial").[5]

        The defendants do not address Adam's claims with respect to the three white witnesses other than stating that Adam has produced no evidence to prove intent to discriminate based on his race.  Adam provided declarations signed in May, 2002 from all three of the witnesses, each of whom was his neighbor in Milolii at the time of the fire.  Each witness states that he saw a vehicle belonging to someone other than Adam leaving the area of Adam's Milolii residence on the day of the fire.  It appears from the record that each of the witnesses gave his story to the police investigating the fire.  A police report that Adam provided to the court appears to demonstrate that Island Insurance did in fact canvass Adam's neighbors regarding the cause of the fire.  Adam's

---

[5] In his Amended Complaint, Adam also alleges that, during his 2004 federal trial against the police, he "discovered who Defendants fabricated witness is."  Adam contends that the "Defendants" relied on a witness, Amoe Llanes, whose father was a "violent Hawaiian drug dealing gang" member with "police cousins."  Llanes allegedly lied about he fire in order to protect her father and his cousins.  It is not clear which defendants - the HCPD defendants in his 2004 trial or the defendants in the instant action - allegedly "fabricated" this witness.  In any event, Adam has produced no evidence to support this "fabricated witness" claim against the defendants in this action; he has provided nothing that suggests the defendants elicited false testimony regarding the fire.  This unsupported allegation likewise cannot survive a motion for summary judgment.

argument that the defendants ignored the three witnesses simply is not supported by the record.

The court need not decide whether the three declarations constitute sufficient support for Adam's § 1981 claim to survive summary judgment because this claim is barred by the statute of limitations. The defendants assert that the statute of limitations began to run with respect to all of Adam's federal claims no later than August 6, 1999, when the defendants filed their answer to Adam's complaint in the state court action. The court first examines when the statute of limitations began to run on Adam's § 1981 claim based on the three white witnesses and next addresses what statute of limitations applies to this claim.

Federal law determines when a cause of action based on a federal statute accrues. *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000). "[U]nder federal law, a civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.* (*quoting Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Stanley v. Trustees of the Calif. State University*, No. 04-15134, slip op. at 372 (9th Cir. January 11, 2006) (*quoting Abramson v. Univ. of Haw*., 594 F.2d 202, 209 (9th Cir. 1979). Adam's

§ 1981 claim accrued, at the latest, on August 6, 1999, when the defendants filed their answer to his state court lawsuit.

As of August 6, 1999, when the defendants answered Adam's complaint in state court, Adam had actual knowledge of two critical matters: First, he knew that the defendants were denying his insurance claim based on their answer to his complaint; and second, by Adam's own admission, he was aware of the evidence that the three white witnesses could provide and he knew that the insurance company was also aware of this evidence.  In his Amended Opposition to the Defendants' Motion for Summary Judgment at page eight, Adam writes:

> Additionally I met with defendant's adjuster on October 4, 1998, Mr. McGinnis.  While I was talking to Mr. McGinnis, Don MacKay and Chad Knot [two of the white witnesses] came over and started telling me in front of Mr. McGinnis that they both saw a white ford Ranger racing away as our house burst into flames and that this white ford ranger pick up fled to Milolii village. I then interjected that Jim Nemeth [the third white witness] Had (sic) told me the same thing about the white Ford Ranger racing away and fleeing to Milolii Village.  I believe all of this is on a cassette tape that Mr. McGinnis was using.  But despite these witnesses defendants purposely ignored these witnesses and twisted everything around in order not to pay the claim and to cover up for their criminal cousins; the Milolii

gang and or volunteer fire department.[6]

Thus, when the defendants answered the state court complaint on August 6, 1999, again denying that they owed him coverage, Adam either knew (or certainly should have known) that the defendants had ignored or were not persuaded by the evidence provided by his white neighbors.[7]

The court now turns to the question of what statute of limitations period applies to Adam's § 1981 claim. Section 1981, like many of the civil rights statutes, does not contain a statute of limitations. In *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987), the Supreme Court held that courts must borrow the most "appropriate or analogous" statute of limitations from state law when deciding claims based on § 1981. Following this decision, lower courts, including the District of Hawaii, have applied the state statute of limitations for personal injury claims to § 1981 actions. *See*, *e.g.*, *Lesale v. Hawaiian Airlines*, 75 F. Supp 2d 113, 1120 (D. Haw. 1999) ("The two-year limitations period

---

[6] It further appears from Adam's exhibits that Adam knew of at least one of these witnesses on the day his home caught fire. Adam submitted a police report which indicates that Adam learned about the fire from Jim Nemeth, one of the "three white witnesses."

[7] Adam's unsupported allegation regarding his discovery of the "fabricated" witness during his 2004 trial does not change when Adam's § 1981 cause of action accrued for purposes of the statute of limitations. First, as discussed previously, Adam has produced no evidence that the defendants elicited false testimony from the witness or selectively relied on such evidence in denying Adam's claim. Second, even if this "discovery" supported Adam's § 1981 claim, by his own admission, Adam already knew or should have known about the injury underlying his § 1981 claim long before this additional alleged evidence surfaced.

governing personal injury actions is the most analogous state statute of limitations to govern § 1981 suits[.]").  Hawaii's statute of limitations for personal injury actions, HRS § 657-7, is two years.

In 1990, Congress enacted a "catchall" four-year statute of limitations that applies to federal statutes enacted after December 1, 1990.  28 U.S.C. § 1658.  Because Congress amended § 1981 in 1991, an issue arises as to whether Adam's claim under § 1981, as amended by the 1991 Civil Rights Act, is governed by the two-year statute of limitations for personal injury claims or the four-year statute of limitations established by § 1658.  In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004), the Supreme Court held that "a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990 – and therefore is governed by § 1658's 4-year statute of limitations – if the plaintiff's claim against the defendant was made possible by a post-1990 enactment."  The court need not resolve the issue of whether Adam's § 1981 claim "was made possible by a post-1990 enactment," however, as Adam's claim, which accrued on August 6, 1999, is barred under either the two-year or four-year statute of limitations.

2. § 1982

In his § 1982 cause of action, Adam asserts that the defendants

forced him to leave his home rather than enforcing the laws and protecting him and his family.  Adam's § 1982 claim appears to refer to his allegation that he was forced to leave his Milolii home shortly before the property suffered fire damage.  He also appears to refer to his allegedly forced move to New Hampshire in May, 1999.

Adam's § 1982 claim cannot survive summary judgment because he has produced no evidence indicating that the defendants were involved in any of the alleged conduct underlying the claim.[8]  *See Celotex*, 477 U.S. at 323-24. Adam alleges that the Department of Human Services ("DHS") forced him off of his property and eventually out of Hawaii by refusing to return his daughter to him as long as he resided at his Milolii residence.  Nowhere, however, does Adam indicate that the defendants in this case, his property insurers, had anything to do with his allegedly forced move from his Milolii home or from the State of Hawaii. Rather, Adam seems to assume that HPIA and DHS are interchangeable because both are state-created entities.  The mere fact that HPIA was created by a Hawaii statute does not make HPIA responsible for actions taken by DHS.  Because

---

[8] The defendants argue that Adam has not stated a claim under § 1982 because his complaint contains no allegations pertaining to the purchase, sale, holding, or inheritance of real property.  However, Adam's claim does relate to the holding of property insofar as he alleges that he was forced out of his Milolii home.  The court need not examine whether the asserted property interest is protected by § 1982 because Adam has presented no facts indicating that the defendants in this action forced him out of his home or out of the State of Hawaii.

Adam does not allege that the defendants had any direct or indirect involvement in the conduct underlying his § 1982 claim, the defendants are entitled to summary judgment as to this claim.

Even if Adam asserted a valid § 1982 claim against the defendants, any such claim is barred by the statute of limitations.  Adam alleges that DHS forced him to move from his Milolii home shortly before his house burned down on October 1, 1998 and he contends that he was forced to leave Hawaii in May 1999.  Adam would have been aware of these claims by the time the allegedly forced moves occurred.  Therefore, a § 1982 claim based on his move from his Milolii home would have accrued sometime before October 1998 and a claim based on his move from Hawaii would have accrued in May 1999.

Section 1982, like many federal civil rights statutes, lacks a limitation period.  The court therefore looks to analogous state law to determine the appropriate limitation period.  *See Wilson v. Garcia*, 471 U.S. 261, 266 (1985) ("When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation if it is not inconsistent with federal law or policy to do so.").  Although the Ninth Circuit has not addressed the question of what is the most analogous statute to § 1982 for purposes of determining the statute of limitations, federal courts that have

23

addressed this issue have concluded that § 1982 is best characterized as a personal injury action.  *See Mitchell v. Cellone*, 291 F. Supp. 2d 368, 372 (W.D. Pa. 2003) ("Although section 1982 involves transactions relating to real and personal property its purpose is not to enforce a contract or rectify a violation of a contract, but rather to rectify a wrong done to a person based on his or her race, i.e., an injury to the person."), *reversed on other grounds by* 389 F.3d 86 (3rd Cir. 2004); *Scheerer v. Rose State College*, 774 F. Supp. 620, 622 (W.D. Okla), *aff'd*, 950 F.2d 661 (10th Cir. 1991). The court agrees and concludes that Hawaii's two-year statute of limitations for personal injury actions applies to Adam's § 1982 claim.  Because Adam filed the instant action on September 13, 2004, more than two years after the latest date on which a § 1982 action may have accrued, Adam's §1982 claim is barred by the statute of limitations.

   3.  § 1983

          Adam also asserts a claim under § 1983, though he does not specify which of his allegations forms the basis of this claim.  As discussed above, Adam's complaint contains numerous allegations of civil rights abuses, many of which reiterate the claims alleged in his federal civil rights lawsuit that he initiated in 1998.  Aside from specific charges contained in his §§ 1981 and 1982 claims, Adam contends that the HCPD failed to protect him and his family from

24

his violent neighbors and then conducted a racially biased investigation of the fire that destroyed his home.  He also asserts that the police selectively arrested him on weapons charges after he was forced to protect himself from neighboring residents in Milolii.

Adam makes little effort to connect these alleged abuses to the defendants in this case.  Though Adam clearly believes that the State of Hawaii is ultimately accountable for all of the abuses he has allegedly suffered, he cannot hold the defendants responsible for the HCPD's conduct simply because HPIA was created by a Hawaii statute.

To the extent that Adam alleges, as he does in his § 1981 claim regarding the three white witnesses, that the defendants were involved in the police department's racially biased investigation of the fire, this claim accrued by August 6, 1999, at the latest and therefore is barred by the statute of limitations.  As discussed above, Adam contends and the record reflects that he diligently pursued his insurance claim with the defendants and ultimately sued them in state court.  Adam knew about all three of these white witnesses as of October, 1998.  Moreover, Adam clearly knew about the alleged racial bias of the police department before his house burned down as he had been pursuing a federal civil rights suit against the department since June, 1998.  Given Adam's diligent

pursuit of his insurance claim, his knowledge of the white witnesses, and his knowledge of the alleged racial bias among the police, he knew or should have known about his insurance company's alleged involvement in the allegedly racially biased police investigation by the time the defendants responded to his state court complaint on August 6, 1999.

Section 1983 does not contain a statute of limitations. The Supreme Court has held that courts should look to the local statute of limitations for personal injury actions as the most analogous statute to § 1983. *Wilson*, 471 U.S. at 276. Therefore, Hawaii's two-year statute of limitations for personal injury actions, HRS § 657-7, applies to Adam's §1983 claim. Because Adam's § 1983 claim accrued, at the latest, on August 6, 1999, the statute of limitations had run on this claim well before Adam filed the instant action on September 13, 2004.

4. § 1985

Adam's § 1985 claim alleges that the defendants were involved in a conspiracy to deprive him of his civil rights. Adam does not specify which of his factual allegations forms the basis of the alleged conspiracy or which section of § 1985 the alleged conspiracy violates.[9] As discussed above, Adam has failed to

_____

[9] Section 1985 contains discrete substantive clauses. Section 1985(1) concerns preventing an officer of the United States from performing his or her duties. The first clause of section 1985(2) concerns conspiracy to obstruct justice in the federal courts, or to intimidate a

26

provide facts, or in some instances even allegations, connecting the defendants to any of the alleged civil rights abuses that he suffered.   Therefore, regardless of the factual allegations on which Adam bases his §1985 claim, the defendants are entitled to summary judgment.

Even if Adam had produced evidence tying the defendants to a conspiracy with the HCPD, this claim is barred by the statute of limitations.  As discussed above, Adam's civil rights claims all accrued by August 6, 1999, at the latest.  Hawaii's two-year statute of limitations for personal injury actions applies to Adam's § 1985 claim.  *McDougal v. County of Imperial*, 942 F.2d 668, 673 (9th Cir. 1991) ("[S]uits under § 1985(3) are also best characterized as personal

---

party, witness or juror in connection therewith.  The second clause of § 1985(2) provides a cause of action if:

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

The first clause of § 1985(3) provides a cause of action for a private conspiracy to deny equal protection of the laws.  The second clause of § 1985(3) provides a cause of action for a conspiracy designed to "prevent[] or hinder[] the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws."  The third clause of § 1985(3) concerns conspiracies to interfere with federal elections.

Adam appears to assert a claim under § 1985(2) or the first clause of § 1985(3). Regardless, he has not alleged facts connecting the defendants to a conspiracy cognizable under any clause of § 1985.

27

injury actions and are governed by the same statute of limitations as actions under

§ 1983.").  Therefore, even if Adam could assert a claim under § 1985, the statute

of limitations would have run on this claim well before September 13, 2004,

when Adam filed the instant action.

     5.  <u>§ 1986</u>

     Adam asserts a claim under § 1986 for the defendants' alleged

failure to prevent a § 1985 conspiracy.  However, a violation of § 1986 depends

upon the existence of a valid § 1985 claim.  42 U.S.C. § 1986 ("Every person

who, having knowledge that any of the wrongs conspired to be done and

mentioned in the preceding section [§ 1985], are about to be committed, and

having power to prevent . . . the same, neglects or refuses so to do . . . shall be

liable to the party injured[.]"); *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1040

(9th Cir. 1991) (noting that a § 1986 claim depends on the existence of a § 1985

claim).  As discussed above, Adam's § 1985 claim does not survive summary

judgment.  It follows, therefore, that the defendants are also entitled to summary

judgment on Adam's § 1986 claim.

     Even if Adam could state a claim for a § 1985 conspiracy, and by

extension a claim under § 1986, the statute of limitations has run as to his § 1986

claim.  As discussed above, Adam either knew or should have known of the

alleged conspiracy underlying his §§ 1985 and 1986 claims by August 1999. Section 1986 contains a one year statute of limitation.  42 U.S.C. § 1986 ("[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action accrued.").  Because Adam did not file suit until September 13, 2004, his § 1986 claim is barred by the one-year statute of limitations.

## IV.  CONCLUSION

For the reasons stated herein, the court GRANTS the defendants' motion for summary judgment as to all of Adam's claims.  As this order disposes of all outstanding matters in this case, the clerk of the court is instructed to enter judgment in favor of the defendants and close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January __12__,  2006.



J. Michael Seabright
United States District Judge

29

*Adam v. Hawaii Property Insurance, et al*, Civ. No. 05-00304 JMS/BMK, Order Granting Defendants' Motion for Summary Judgment.